ARKANSAS STATE HIGHWAY COMMISSION *v.*
JEWELL THOMAS BANE ET AL

5-4927                                        445 S. W. 2d 106

Opinion delivered September 22, 1969

*Thomas B. Keys* and *Virginia Tackett,* for appellant.

*Felver A. Rowell, Jr.,* for appellees.

CARLETON HARRIS, Chief Justice. This is a highway condemnation case. On June 30, 1966, 18.40 acres were taken in fee by the Highway Department for Interstate Highway No. 40 from an 80-acre parcel owned by Jewell T. Bane, appellee herein, the result being that her remaining property was divided into two parts, approxi-

mately 18 acres being located north of the Interstate, and approximaely 43 acres being located south of the Interstate. A jury trial to determine Mrs. Bane's damages resulted in a finding of $11,000.00 damages, and from the judgment entered in that amount, appellant brings this appeal.

Appellant attacks the testimony of Mrs. Bane as lacking substantiality, and also contends that the evidence of Mr. Forrest Griswood, manager of the Central Arkansas Production Credit Association, who testified on her behalf, is in the same category.

As to Mr. Griswood, this witness testified that the before condemnation value of the property was $22,-500.00. and the valuation after the taking was $12,535.00, leaving total damages in the amount of $9,965.00. The department moved to strike Griswood's before value, because it contended that this value was based on a 1968 sale of land nearby, rather than 1966, the witness testifying that the land sold was comparable to that here in litigation. The taking having occurred in 1966, it is, of course, proper that 1966 sales be used for comparison. However, the court instructed the jury that it should disregard any sales mentioned by the witness which occurred after June 30, 1966; furthermore, the witness mentioned one 1966 sale where the property was sold for $200.00 an acre (which was the same figure per acre as the 1968 sale which the court held inadmissible). It is thus seen that Griswood did have a proper basis for reaching his before value, and the jury, having twice been told to disregard testimony relative to 1968 sales, we conclude that the denial of appellant's motion was not prejudicial. The testimony of this witness was not particularly impressive, but we are unable to say that it did not constitute substantial evidence.

We agree with appellant that the judgment must be reversed because of the testimony of Mrs. Bane, the landowner. Mrs. Bane gave the before taking value of

her property as $27,500.00, and the after the taking value as $9,990.00, leaving her figure for damages at $17,510.00. The before value was reached by considering the land to be worth $20,000.00, or $250.00 per acre, and the building and improvements were placed at $7,500.00.

Mrs. Bane was the only witness who testified to damages of more than $9,965.00, and it is thus apparent that if the $11,000.00 verdict is sustained, it must be on the basis of her testimony. While we have many times said that a landowner is entitled to testify to the value of his or her property, still the basis of the value reached should be shown. Mrs. Bane was not testifying that the subject property had a peculiar value to her, because of sentiment, or like reasons; rather, she professed to know the market value of property in the area. It definitely appears that several matters mentioned by the witness, which contributed to the damage figure reached, were not known to her, but were based purely on hearsay; apparently, information on one of the main items depended upon in her estimate was erroneous.

A great deal of uncertainty clouds Mrs. Bane's testimony. When asked if there were metal structures on the property, she replied, ''I think there is two or three for beans.''[1] Interrogated as to what they are used for at the present time, she replied that she did not know, as she had not looked lately, nor did she know whether any bins had been placed on the property after the condemnation. She did admit that ''maybe'' a couple had been placed on the premises recently. Mrs. Bane said that water would no longer flow to the lands to the south through the culvert in quantities as large as before the culvert was built (the water being essential to the raising of cattle), and it would be necessary to build a pond. However, when questioned, it developed that the statement was based purely on what someone had told her: ''I haven't been over there recently, only everyone has said there would be no water over there,

[1]These beans, according to the witness, are not grown on the farm, but on lands of a neighbor which are rented by her brother.

so there will be no cattle over there.'' When asked as to the size of the culvert, she gave an answer, but on further examination, stated, ''I didn't measure it, but that is what I have been told.'' Although she had earlier stated that the improvements on the place amounted to $7,500.00, she could not, or did not, specify the manner in which this figure was reached.[2]

The witness said that she had arrived at her figures on the basis of her knowledge of what other lands in the near vicinity had sold for. The lack of substantiality of this testimony is reflected in her testimony on cross-examination. From the record:

''Q. In arriving at $250.00 per acre, Mrs. Bane, you said you were familiar with what land was selling for in 1966, similar type land, and I believe you mentioned the Starkey property?

A. I know this. I know it was really high. It would be $250.00 an acre.

Q. I thought I heard your testimony on that. Think back carefully. Do you know of your own knowledge that Mr. Starkey paid $250.00 an acre for that?

A. I imagine he paid more than that. I'm not sure. I do know we have figured it out a time or two, thinking about when I was asked the price, and how much it was an acre.

\* \* \*

Q. \* \* \* It was my understanding you based your opinion of $250.00 per acre on the fact that Mr. Starkey paid $250.00 an acre for his?

[2] ''Q. How much were they, considering their age and everything, how much did they contribute to the property out of the $27,500.00? How much of that was due to the barns and fences? A. How much were they worth to the place? Q. Yes, mam. A. I don't know.''

A. It has come from two or three different people, and I don't just exactly know what Starkey paid, but I know it was a high price.''

The state's evidence, subsequently offered, reflected that the Starkey property sold for approximately $79.00 per acre in June of 1963, and, according to one of the state's expert witnesses, would have sold for approximately $100.00 an acre in June of 1966. Be that as it may, the point is that Mrs. Bane admittedly did not know what the Starkey property sold for, and she had no knowledge of other sales in 1966, i. e., she said there had been sales, but she did not know the amounts required for purchase. It might be mentioned that Mrs. Bane does not live on the property.

This case bears a striking similarity to *Arkansas Highway Commission* v. *Darr,* handed down on February 24, 1969. There, Mrs. Darr owned certain land which had been condemned by the Highway Department. Two appraisers testified in her behalf, and gave their opinions as to the amount of damages she had suffered. She also testified, fixing her damages at more than twice as much as either of these witnesses. The jury returned a verdict in her behalf for damages in an amount that was greater than that fixed by either of her experts. Accordingly, there, as here, the award had to stand on the strength of the landowner's testimony. This court held that her testimony on damages was not substantial. She did not live on the land, and showed no reasonable knowledge of market values of lands in the community, and we commented that it was apparent that she had a sentimental attachment for the farm. It was pointed out that, while a landowner is permitted to testify, because of his or her status as the owner, her conclusion on damages had to pass the substantial evidence test, and it was necessary that her testimony be examined to see if she gave a satisfactory explanation for her conclusions.

Here, Mrs. Bane did not give satisfactory reasons

for her conclusions, and it is necessary that the judgment be reversed. We know of no way to fix an amount as just compensation for the damages occasioned by the taking of her lands. It is certain that the jury gave consideration to her testimony, else it could not have reached its verdict; for that matter, we do not know that it considered the testimony of Griswood. The award could have been based solely on the testimony of the owner. With her testimony out of the way, it might be that the jury would have taken the appraisal of one of the state's two experts, both of which were considerably less than that of Mr. Griswood. Accordingly, as in *Darr*, we reverse and remand.

It is so ordered.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. Conceding that appellee was not familiar enough with the property to have substantial basis for her testimony as to value, her unfamiliarity with real estate values should not be of any consequence. *Arkansas State Highway Commission* v. *Fowler*, 240 Ark. 595, 401 S. W. 2d 1. I also think that she had the right to rely on hearsay with reference to specific sales. I find nothing in the record showing what consideration actually passed on the Starkey purchase. The state's evidence on this point was also hearsay.

Even if Mrs. Bane's testimony did not constitute substantial evidence, I do not agree that the verdict rests on her testimony alone. It is true that Forrest Griswood stated total damages in the sum of $9,965 based on the values before and after condemnation as stated in the majority opinion. In arriving at the value after the taking, however, he included the 18.4 acres taken by appellant at $200 per acre. Appellant concedes in its brief that on the face of the matter, $3,680 should be added to his calculation of damages. The inclusion of

this amount in the valuation of the remaining land was an obvious error. In view of the correct instruction given by the trial judge the jury could easily have arrived at its verdict upon the basis of his testimony. This instruction told the jury to ascertain just compensation by determining the fair market value of the *whole* property immediately before the taking and the fair market value of the *remaining* property immediately after the condemnation. When the jury applied the court's instruction, the amount of just compensation it might have found on the basis of Griswood's testimony could have been as high as $13,645. For this reason I would affirm the judgment.